**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**PENNY SKIBA,**

                 **Plaintiff,**               **3:13-cv-1361
                                                               (GLS)**

                 v.

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

                 **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Nancy J. Meserow             NANCY J. MESEROW, ESQ.
7540 SW 51st Ave
Portland, OR 97219

Lachman, Gorton Law Firm              PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN       JEREMY A. LINDEN
United States Attorney                    Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Penny Skiba challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Skiba's arguments, the court affirms the Commissioner's decision and dismisses Skiba's complaint.

## II. Background

On May 12 and May 14, 2011, Skiba filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since May 1 and May 2, 2011. (Tr.[1] at 63-69, 70, 140-46, 147-54.) After her applications were denied, (*id.* at 71-76), Skiba requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 78-79). A hearing was held on October 1, 2012. (*Id.* at 28-62.) On November 16, 2012, the ALJ issued a decision denying the requested benefits, (*id.* at 14-26), which became the

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 10.)

Commissioner's final determination upon the Appeals Council's denial of review, (*id.* at 2-7).

Skiba commenced the present action by filing her complaint on November 1, 2013, wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 9, 10.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 14, 18.)

### III. <u>Contentions</u>

Skiba contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 14 at 9-25.) Specifically, Skiba argues that the ALJ erred in her determination of Skiba's residual functional capacity (RFC), and did not properly assess the medical opinions of record or Skiba's credibility, which tainted her ultimate conclusion that Skiba could return to her past relevant work. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 18 at 1-25.)

### IV. <u>Facts</u>

The court adopts the parties' undisputed factual recitations. (Dkt.

3

No. 14 at 1-9; Dkt. No. 18 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Evaluating Record Evidence

The bulk of Skiba's brief consists of her argument that the ALJ "did not properly assess [the] psychiatric opinions of record," and, therefore, the finding that she is not disabled is not supported by substantial evidence. (Dkt. No. 14 at 12-19.) Specifically, Skiba notes that the ALJ did not expressly consider the opinion of Dr. T. Harding, a state agency psychological consultant, whose opinion, Skiba argues, supports a more

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

4

restrictive RFC than that reached by the ALJ.  (*Id.* at 12-14.)  Additionally, Skiba objects to the relative weight given to various pieces of record evidence.  (*Id.* at 14-19.)  The Commissioner asserts that the ALJ's determination is supported by substantial record evidence, and that she properly weighed the evidence in assessing Skiba's RFC.  (Dkt. No. 18 at 4-20.)  The court agrees with the Commissioner.

A claimant's RFC "is the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).  An ALJ's RFC determination must be supported by substantial evidence[3] in the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c).  Controlling weight will be given to a treating physician's opinion that is

---

[3] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

5

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to [her] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citation omitted).

Here, Dr. Nathan Hare, a one-time examining psychologist, opined that Skiba "is not able to do sustained work-related physical or mental activities in a work like setting on a regular and continuing basis." (Tr. at

6

442.) The ALJ gave this opinion little weight because "it is inconsistent with the record as a whole and Dr. Hare's own evaluation notes." (*Id.* at 21); *see* 20 C.F.R. § 404.1527(c)(4). Further, in reaching his opinion, Dr. Hare did not review any of Skiba's past medical records, and based his opinion on Skiba's own subjective reports. (Tr. at 439); *see* 20 C.F.R. § 404.1527(c)(3). In any event, Dr. Hare also noted that Skiba displayed adequate grooming, showed no evidence of psychosis or delusional thinking, demonstrated fair insight and judgment, and showed "at least average intellectual ability," (Tr. at 439), and thus the ALJ determined that these "benign observable findings" did not support Dr. Hare's more restrictive functional assessment, (*id.* at 21).

The ALJ also gave little weight to a questionnaire completed by social worker Valerie Jones-Guiles. (*Id.*) In her questionnaire, Jones-Guiles indicated "more than slight" or "medium" limitations in several functional areas, and opined that Skiba would reasonably be expected to have more than three absences from work per month as a result of the symptoms of her medical conditions. (*Id.* at 434-35.) The ALJ noted, however, that Jones-Guiles, as a social worker, is not an acceptable medical source under the regulations, *see* 20 C.F.R. §§ 404.1513,

7

404.1527, and found her opinion to be "speculative and unsubstantiated based on the benign examination findings of record." (Tr. at 21); *see* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) (explaining the factors relevant to consideration of the opinion of a non-acceptable medical source, including "[h]ow consistent the opinion is with other evidence").

Conversely, the ALJ gave "greater weight" to the opinion of Dr. Sara Long, (Tr. at 21), a consultative examiner, who indicated that Skiba was "cooperative, with good social skills," had fair judgment and insight, and "appear[ed] to be functioning on an average intellectual level," (*id.* at 317-18). Dr. Long reported that Skiba could follow and understand simple instructions, perform tasks independently, maintain attention and concentration, and relate adequately with others. (*Id.* at 318.) The ALJ noted that this opinion was consistent with the record as a whole, particularly treatment notes that indicated relatively normal mental status examinations. (*Id.* at 20-21, 275, 308, 314, 336, 429, 439.)

Although Skiba points to evidence that, she argues, supports her contention that she could not perform light, unskilled work as found by the ALJ in her RFC determination, "whether there is substantial evidence supporting the [claimant]'s view is not the question," and instead, the court

8

must "decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Here, as referenced above, the ALJ adequately discussed the substantial evidence of record supporting her determination that Skiba was capable of unskilled work. (Tr. at 20-21, 275, 308, 314, 336, 429, 439.)

Lastly, although Skiba argues that the ALJ erred by not explicitly mentioning the opinion of Dr. Harding, as noted above, "where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to [her] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability." *Petrie*, 412 F. App'x at 407 (internal quotation marks and citation omitted). In fact, Harding's functional assessment was consistent with the ALJ's assessment that Skiba could perform unskilled work, as Harding opined that Skiba "is able to follow and understand simple directions and instructions," perform both simple and complex tasks independently, "maintain a regular schedule," and "relate adequately with others." (Tr. at 18, 336); *see* SSR 85-15, 1985 WL 56857, at *4 (1985) ("The basic mental demands of competitive, remunerative, unskilled work

include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."). In sum, the weight afforded to the various opinions by the ALJ, for reasons which are fully articulated in her written decision, is free of legal error and supported by substantial evidence. (Tr. at 18-22.) The ALJ also undertook a thorough discussion of the medical and testimonial evidence of record, which supports her determination that Skiba was capable of light,[4] unskilled work. (*Id.*) As such, the court affirms the ALJ's RFC determination.

## B. Credibility

Similarly, Skiba next argues that "the ALJ [did] not properly assess [her] credibility," and points to evidence that, she argues, is consistent with her allegations regarding the intensity and limiting effects of her symptoms. (Dkt. No. 14 at 19-23.) In response, the Commissioner asserts that the ALJ's credibility determination is supported by substantial evidence. (Dkt.

---

[4] Under the regulations, light work requires lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds. *See* 20 C.F.R. § 404.1567(b). Further, "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday." SSR 83-10, 1983 WL 31251, at *6 (1983).

10

No. 18 at 20-23.) The court again agrees with the Commissioner.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ determined that Skiba's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the record evidence. (Tr. at 19-21.) In her argument, Skiba points to evidence that, she argues, is consistent with her statements regarding her symptoms and their limiting effects. (Dkt. No. 14 at 19-23.) However, the ALJ provided several bases upon which she justified questioning Skiba's overall credibility. For example, the ALJ first noted that Skiba's daily activities "have been far greater than generally alleged," as demonstrated by record evidence and the fact that she has worked—though not enough to constitute substantial gainful activity which would disqualify her from benefits—since her alleged onset date. (Tr. at 19); *see* 20 C.F.R. § 404.1529(c)(3)(i) (indicating that a claimant's daily activities are relevant to determining the severity of her symptoms and impairments). Although Skiba testified that she is in constant pain and reported a limited ability to walk and bend her fingers, (Tr. at 39-40), the record indicated that she performed household chores such as cooking, cleaning, and shopping, and was able to care for her husband, (*id.* at 44-

12

45, 313, 318). The record also contains evidence suggesting that Skiba may have been exaggerating her symptoms during psychological evaluations. (*Id.* at 441.)

The ALJ also notes that, during the time period after her alleged onset date, Skiba collected unemployment benefits—which require her to be "able to work," *see* N.Y. Labor Law § 527—despite her current allegations of an inability to work. (Tr. at 19-20, 167.) "[C]ourts throughout the United States have held that the issue of a plaintiff claiming to be disabled yet drawing unemployment insurance benefits,"—while not "proof-positive that [the] plaintiff was no longer disabled"—"may be considered in determining a plaintiff's credibility." *Jackson v. Astrue*, No. 1:05-CV-01061, 2009 WL 3764221, at *8 (N.D.N.Y. Nov. 10, 2009). Although Skiba speculates that it may have been "unclear whether [she] fully understood the unemployment certification," (Dkt. No. 14 at 21), she points to no factual support for this speculative assertion. Thus, after expressly laying out the applicable regulations and the relevant factors, the ALJ made a credibility determination which is supported by substantial evidence in the record and is not patently unreasonable. (Tr. at 18-22); *see Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir.

1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." (internal quotation marks and citation omitted)).

C. **Ability to Return to Past Work**

Lastly, Skiba contends that, because of errors in the weight given to the record evidence and the assessment of her credibility, as discussed above, the ALJ's RFC determination was erroneous, and tainted the ultimate determination that Skiba could return to her past relevant work as a courier/runner—and thus the finding that Skiba is not disabled. (Dkt. No. 14 at 9-12, 23-25.) Specifically, in addition to the arguments made above, Skiba contends that the ALJ did not adequately consider all of her impairments when determining her RFC. (*Id.* at 23-25.) Skiba also argues that the ALJ made insufficient findings regarding her ability to fulfill the math requirements of her past work. (*Id.* at 9-12.) For the following reasons, the court finds these arguments unavailing.

"[I]n the fourth stage of the [disability] inquiry, the claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003). In other words, a claimant is not

14

disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. *See* SSR 82-61, 1982 WL 31387, at *2 (1982); *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981). "'[I]n order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities.'" *Kochanek v. Astrue*, No. 08-CV-310, 2010 WL 1705290, at *11 (N.D.N.Y. Apr. 13, 2010) (quoting *Kerulo v. Apfel*, No. 98 CIV. 7315, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999)).

Skiba argues that the ALJ failed to consider all of the limitations found in the step three listings determination when arriving at Skiba's RFC, and that the limitations found by the ALJ at step three in fact preclude a finding that Skiba is able to return to her past relevant work as a courier/runner. (Dkt. No. 14 at 24-25.) However, "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps [two] and [three] of the sequential evaluation process." SSR 96-8P, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); *see Rohey v. Astrue*, Civ. No. 5:09-CV-

15

1063, 2012 WL 4485778, at *5 (N.D.N.Y. Sept. 26, 2012). Instead, "[t]he mental RFC assessment used at steps [four] and [five] of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C" of the listings. SSR 96-8P, 61 Fed. Reg. at 34,477. Here, the ALJ accurately stated the law when she acknowledged that her findings of Skiba's moderate difficulties in social functioning and maintaining concentration, persistence or pace do not, by themselves, constitute an RFC assessment, but, rather, are only used at steps two and three of the sequential evaluation process to determine if her impairments meet the listings. (Tr. at 18.) The ALJ then appropriately proceeded to engage in an assessment of Skiba's RFC, considering the entire record and the degree of limitation Skiba has in the areas of social functioning and maintaining concentration, persistence, or pace. (*Id.* at 18-22.) As discussed above, the ALJ properly weighed the opinion evidence of record and Skiba's credibility, and there is substantial evidence supporting her conclusion that Skiba is capable of performing light, unskilled work.

Skiba also mentions, without much argument, that the ALJ did not expressly consider the limitations caused by her fibromyalgia, even though

16

it was classified as a severe impairment.  (Dkt. No. 14 at 23-24.)  However, it is clear from the ALJ's discussion of Skiba's physical impairments and exertional RFC that the alleged limiting effects of her fibromyalgia were taken into consideration.  The ALJ pointed to treatment notes in the record regarding Skiba's physical impairments, which reflected "merely routine visits with mostly transient complaints."  (Tr. at 20.)  These "normal physical . . . examinations . . . fail to support [Skiba's] subjective complaints," (*id.*), and during a consultative evaluation shortly after her alleged onset date, Skiba was found to have no observable physical limitations.  (*Id.* at 313-14.)  Skiba also reported that her fibromyalgia symptoms were controlled with medications.  (*Id.* at 39-41, 416, 419.)

With respect to Skiba's remaining argument that the ALJ did not adequately consider her math limitations when determining her ability to perform her past work, (Dkt. No. 14 at 11), Skiba has neither alleged nor pointed to any record evidence indicating that her alleged math issues were due to a physical or mental disability.  To the contrary, Skiba simply testified at her hearing that she had a long history of difficulties with math, (Tr. at 32-33), yet the evidence of record supports a finding that her cognitive abilities are intact and she maintains an average level of

17

intellectual functioning, (*id.* at 318, 429, 439). Further, Skiba testified that, although she had a "hard time" with division, she was capable of performing basic mathematical operations. (*Id.* at 32-33.) As noted by the ALJ, Skiba's past work as a courier/runner, designated in the Dictionary of Occupational Titles as "office helper," consists of "[l]ight [w]ork," and requires the employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," Dictionary of Occupational Titles, Code 239.567–010, 1991 WL 672232 (4th ed., 1991), which is consistent with Skiba's RFC to perform light, unskilled work. (Tr. at 18-22); *see* SSR 85-15, 1985 WL 56857, at *4. Skiba has thus not met her burden at step four "to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally," *Jasinski*, 341 F.3d at 185. Instead, the ALJ's determination that Skiba could perform her past relevant work as a courier/runner, given her RFC to perform light, unskilled work, is supported by substantial evidence and will not be disturbed.

## D. <ins>Remaining Findings and Conclusions</ins>

After careful review of the record, the court affirms the remainder of the ALJ's decision as it correctly applies the relevant legal standards and is

18

supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Skiba's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

April 20, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court